BUCKINGHAM REALTY COMPANY ET AL., PROSECUTORS, v. TOWN OF MONTCLAIR, RESPONDENT.

Argued November 4, 1930—Decided November 22, 1930.

Before Justices CAMPBELL and BODINE.

For the prosecutors, *Frazer & Trimble.*

For the respondent, *George S. Harris.*

PER CURIAM.

These writs seek a review of certain ordinances of Montclair and assessments for benefits laid against lands of the prosecutors. By consent the matters were argued as one.

1. The first attack is made upon the ordinance known as the ordinance of November 12th, 1929, which, it is insisted, is not an improvement ordinance but one simply determining to acquire lands and therefore it is not the proper basis for levying assessments. The specific complaint is that nowhere therein is there any defining of the line of South Park street as widened nor the extent of such widening. The title of the ordinance recites the purpose of the taking to be "for the purpose of widening South Park street."

Section 1 provides: "That the board of commissioners of the town of Montclair, in the county of Essex, do hereby determine that a certain tract of land hereinafter described

is required and shall be acquired by the said town of Montclair for the purpose of widening South Park street in said town as a local improvement." Section 5 particularly described the tract to be acquired, by metes and bounds, and by reference to a map attached entitled "Proposed acquisition of land for the widening of South Park street." Section 6 provided "the board of commissioners of the town of Montclair hereby declare and determine that forty per cent. of the cost of the above improvement shall be borne by the town of Montclair at large, and the balance of the expense and cost thereof, when completed, shall be ascertained and determined as provided by law, and thereafter such balance shall be assessed upon the lands and real estate, actually, peculiarly and specially benefited thereby, in proportion to the peculiar benefit, advantage or increase in value which the said respective lots and parcels of land and real estate shall be deemed to receive by reason of the local improvement herein provided for."

After the adoption of the ordinance proceedings to condemn the lands were taken under the General Condemnation act of 1900 (2 *Comp. Stat., p.* 2182). The commissioners made an award of $187,750 to the landowners on February 16th, 1930. The original ordinance of November 12th, 1929, having appropriated $180,000 for such purpose, being less than the amount of the award, it became necessary and the ordinance was, in that particular, by an amendatory ordinance introduced February 27th, 1930, amended by increasing the appropriation by $15,000, which ordinance was finally passed March 13th, 1930.

It was sometime thereafter, presumably, that the award was paid and the town took possession of the land (the stipulation in the case being silent as to the exact date of payment) which had up to that time been occupied as a market, known as the E. M. Harrison Market, and it continued so occupied until about May 15th, 1930, when it was vacated by the former owners. About June 1st, 1930, the buildings were demolished and the street was paved to the width made possible by the taking of the lands in question.

The demolition of the buildings and the paving and curbing were done pursuant to an ordinance that had been adopted March 29th, 1927, antedating the ordinance under attack by nearly three years. This ordinance in its original form seems not to have been made a part of the return but it is stipulated that under it the curb lines on the easterly side of South Park street were so fixed and set as to cut off the sidewalk of the E. M. Harrison Market—and the owner sought by litigation to enjoin the town from carrying out such work. Being unsuccessful in the Court of Chancery an appeal was taken to the Court of Errors and Appeals.

After the acquiring of the property by condemnation this appeal was discontinued; the ordinance of March 29th, 1927, was amended March 22d, 1930, providing for a new curb line based upon the increased width of South Park street, made possible by acquiring the lands before referred to, providing for the demolishing of the buildings on such acquired lands and making a further appropriation for the carrying on of the improvement.

Thereafter the cost of the acquiring of the lands in question was certified to the assessor who levied assessments against the lands of prosecutors and others. The total cost as certified was $194,781.34; the total assessments $109,622, and the amount borne by the town at large, $85,159.34.

Under these facts and circumstances a different situation from that in *Root* v. *Jersey City,* 5 *N. J. Mis. R.* 973, is presented, in our judgment, making the finding therein inapplicable.

2. It is next urged that the ordinance of February 27th, 1930, passed March 13th, 1930, amending the ordinance of November 12th, 1929, by increasing the appropriation by $15,000 from $180,000 to $195,000, is invalid or, at least, in so far as these prosecutors are concerned because no notices of the pendency and passage of such ordinance were mailed to them as required by *Pamph. L.* 1926, *p.* 378, *art.* 10, § 1. A sufficient answer to this is that this court has fully considered the same question at the present term in cases 242 and

243, DeMarmon *v.* Roselle, and reached a conclusion adverse to the contention of the prosecutors here.

3. It is next urged that lands to be taken for a local improvement, the cost of which is to be assessed against properties benefited, may not be acquired under the Eminent Domain act of 1900.

The contention of prosecutors under this point appears to be that section 23, article 20 of the Home Rule act as amended (*Pamph. L.* 1925, *p.* 233), is mandatory and absolutely controlling as to the procedure in eminent domain. Under *Fishblatt* v. *Atlantic City,* 81 *N. J. L.* 64, and *Iandell* v. *State,* 101 *Id.* 294, this argument is highly persuasive, but, we conclude, the prosecutors here are not in a position to urge it to their advantage. The property owner might have complained but we are unable to see how these prosecutors can because there is no contention that the award was not a just and fair compensation for the lands taken and it is difficult, if not impossible, for us to see how this question can be raised or successfully controverted by the prosecutors. *Clausen* v. *Ridgefield,* 91 *Id.* 238, is also urged in support of this contention. A reading of that case will show that it has no application to the matter before us for the reason that the prosecutors here are not in the position of the prosecutor-respondent in that case.

It is finally urged under this point that section 17 of the Condemnation act of 1900 by express language makes such act inapplicable to a situation existing in the case before us.

Our answer to this is also that it calls for no decision by us because the prosecutors are not in a position to raise or take advantage of it, for the very good reason that their sole concern must be confined to the correctness and justness of the award to the land owners and whatever method of estimating this was pursued by any constitutional procedure act produced the result to which they were entitled and in which they were concerned.

4. It is finally urged that the assessment area is discriminatory and unfair and does not constitute the just and equitable assessment required by statute.

This question has also been definitely decided by this court in DeMarmon *v.* Roselle, Nos. 242, 243 of the present term.

We have passed upon all the grounds raised by the prosecutors in the face of a most substantial insistence of the respondent that the writs should not have been allowed to review the ordinances in question for the reason that they were not applied for or allowed with proper diligence and for that reason the writs should now be dismissed.

As to the ordinances sought to be reviewed there seems to be no contest but that the prosecutors were at all times informed thereof by notice which was actual or constructive, and their withholding of any attack thereto or against for a period of nine months was not the exercise of that due diligence required of them and, therefore, and for that reason, the writs as directed to the ordinances should be dismissed.

On the contrary the prosecutors sued out the writs within thirty days of the confirmation of the assessments against their lands and therefore, in that respect, their allowance was timely.

Upon the merits of the reasons advanced, and for the reasons stated, the writs will be dismissed, with costs.